[Civ. No. 4744. Fourth Dist. Jan. 6, 1954.]

FRED WILLIAM CHAMBERS et al., Appellants, v.
ROBERT DONALDSON, Respondent.

Henry F. Rager for Appellants.

Parker, Stanbury, Reese & McGee for Respondent.

GRIFFIN, J.—Plaintiffs, husband and wife, brought this action against Robert Donaldson et al., for their alleged negligence arising out of an intersection accident between two cars. Defendant Donaldson and his wife filed a cross-complaint alleging negligence of plaintiffs and prayed for damages. The controlling facts are undisputed.

The accident happened on a clear, dry day at the intersection of Alder Street and Merrill Avenue in the rural area near Fontana. Donaldson was driving his De Soto automobile in a southerly direction on Alder Street accompanied by his wife. Chambers was driving his Ford in an easterly direction on Merrill Avenue, accompanied by his wife. Each street is 24 feet wide with smooth asphalt pavement. There is a 6-foot dirt shoulder on each side of the pavement on each street. It is conceded by all parties that the intersection is quite obstructed. Trees and shrubbery on the northwest corner of the intersection made it practically impossible for a southbound driver on Alder Street to see toward the west on Merrill Avenue until the driver's view cleared the shrubbery along the north edge of Merrill Avenue. The view of an eastbound driver on Merrill Avenue would be almost as badly obstructed. It is also conceded that a stop sign had at one time been lawfully installed at the northwest corner of the intersection facing southbound traffic on Alder Street, that it had been previously removed by some unknown person, and that Donaldson made no boulevard stop as he entered the intersection. This stop sign was originally erected pursuant to a San Bernardino County ordinance which designated Merrill Avenue as a boulevard and required that southbound vehicles on Alder Street stop before crossing Merrill Avenue, and also required "such designated intersections to be clearly marked or signposted . . .." Chambers was familiar with the intersection and knew there was supposed to be a stop sign at the north entrance to the intersection. Donaldson was not familiar with it and did not know that there was supposed to be a stop sign facing him as he approached and entered Merrill Avenue, and did not know that southbound traffic ordinarily was supposed to stop there.

Donaldson said he could see that the corner was a "blind" or an obstructed intersection so he slowed his speed to ap-

proximately 10 miles an hour as he entered it. He also claimed he did not remember anything after his front wheels entered the intersection at about 10 miles an hour and after he had checked in each direction to make sure that no vehicle was within 75 feet of the intersection at that particular instant.

Mrs. Donaldson said she raised her eyes and noticed that she was about in the center of Merrill Avenue and saw the Ford automobile bearing down on her from the west at a distance of 40 or 45 feet, traveling at a speed of 45 or 50 miles an hour, and that the left front side of the Ford struck the right side of the Donaldson De Soto, causing it to throw her from the car.

Chambers testified that he was driving at approximately 30 miles an hour; that the first time he saw the Donaldson vehicle he was approximately 10 or 12 feet west of the intersection and at that time the Donaldson vehicle was approximately 20 to 25 feet north of the intersection traveling between 40 and 45 miles per hour; that the collision was a "head-on-broadside collision" in that the Ford automobile of plaintiffs was struck approximately in the center of its left-hand side by the front of the Donaldson vehicle. All of the parties suffered and sustained severe personal injuries as a result of the accident.

Upon the foregoing facts the jury returned a verdict in favor of the defendant on the complaint of Mr. and Mrs. Chambers, and in favor of the cross-defendants on the cross-complaint of Mr. and Mrs. Donaldson.

Counsel for appellants on this appeal states that there is but one main question involved, i. e., did the court err in giving certain instructions? The first one complained of reads:

"If the boulevard stop sign at the northwest corner was not standing erect and in place at the time Mr. Donaldson approached and entered the intersection, Merrill Avenue was not at that time a through highway at Alder Street.

"A 'through highway' is a highway, or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs are erected as provided in this code." (Citing Veh. Code, § 82.5.)

It is plaintiffs' argument that since the ordinance required that vehicles stop before crossing Merrill Avenue at other streets and since stop signs were actually erected therefor, the

temporary removal of this particular stop sign did not affect the character of the highway, citing out-of-state cases such as *Titus* v. *Braidfoot,* 226 Ala. 21 [145 So. 423] ; *Connors* v. *Dobbs,* 77 Ohio App. 247 [66 N.E.2d 546] ; and *Jones* v. *McCullough,* 148 Kan. 561 [83 P.2d 669].

The ordinance classified Merrill Avenue as a "boulevard" and not a "through highway," and required vehicles to stop before entering or crossing it, and also required it "to be clearly marked or signposted to give notice of such fact . . .."

■ Regardless of some decisions in other states indicating a contrary holding, the courts of this state have disposed of that question in *Casselman* v. *Hartford Acc. & Indem. Co.,* 36 Cal.App.2d 700 [98 P.2d 539] [hearing denied by Supreme Court], where it was said:

"It is urged by appellant that, though no stop sign was erected at the intersection, the duty of stopping was imposed upon respondent as a matter of law, very much the same as the 'stop, look and listen' rule is applied to one driving a vehicle across a railroad track. This is a novel contention, and apparently has some support from other jurisdictions. The rule has never been applied in California in respect to a highway intersection. The premise of the appellant is based upon the assumption that the highway on which Maguire was traveling, and on which the accident occurred, was a 'through highway.' As we have pointed out, this was not the fact. 'Through highways' are not designated by law in this state as continuous in character. They are only such when running past an intersection at which stop signs have been erected. Where there is no sign, there is no such highway."

■ Complaint is then made about an instruction in the language of section 550(b) of the Vehicle Code in reference to the right of way of vehicles approaching or entering intersections, and stating that if the jury found that either driver failed to yield the right of way to the other in violation of that section, such violation was negligence in and of itself. This was followed by another instruction in the language of section 510 of the Vehicle Code in reference to the basic speed law.

The court gave the following instruction at plaintiffs' request: "When a driver does not have a clear and unobstructed view of an intersection and all traffic upon all of the highways entering such intersection for a distance of 100 feet along all such highways during the last 100 feet of

his approach to such intersection, then the statutory speed across such intersection is fifteen miles per hour.''

The only instruction on this subject requested by the defendant reads as follows: ''The evidence establishes that this intersection was an obstructed intersection within the meaning of the Vehicle Code. At obstructed intersections of this type where boulevard stop signs are not in place the *prima facie* or permissible speed limit for vehicles traveling east on Merrill and entering and crossing the intersection of the two streets is 15 miles per hour.

''While a violation of the foregoing speed limit does *not* constitute negligence as a matter of law, the above speed limit should be considered by you in your deliberations on the issue of whether Mr. Chambers drove his vehicle at an unlawful or negligent speed at the time and place in question.''

These instructions were followed by a general instruction in reference to proximate cause.

As we view plaintiffs' objections to the instructions, it is his claim that the speed law applicable to Chambers at that time was not 15 miles per hour but due to the fact that he knew he was traveling on a through highway and was authorized to travel thereon at 55 miles per hour under those conditions, he was not bound by the 15-mile speed limit provision. In support thereof he cites *Shivers* v. *Van Loben Sels,* 109 Cal.App.2d 286 [240 P.2d 635]; and *Howard* v. *Alta Chevrolet Co.,* 111 Cal.App.2d 38 [243 P.2d 804].

In the Shivers case the stop sign was standing at the intersection. Apparently it has no factual application to the instant case. In the Howard case the stop sign was down but the question remained as to whether or not the passenger in the car had knowledge of this fact because he traveled across this same intersection the day before and may have gained knowledge of its absence at that time.

In *Casselman* v. *Hartford Acc. & Indem. Co., supra,* at page 708, the court said: ''Where there is no sign, there is no such highway. In any event, it is the rule in California that one approaching an intersection of this character is governed by the provisions of the Vehicle Code, or, in the absence of any specific provision covering the situation, by the ordinary law of negligence. This case, as we have pointed out, is governed by a specific provision of such code. This appellant, in common with many users of the highway, seems to have the impression that every motorist who attempts to enter a main highway from a side road, does so at his peril.

This misconception of the law is a prolific source of accidents. As we have shown, such motorist has very definite rights granted to him by the provisions of the Vehicle Code, and those users of the main highway who ignore such rights must be prepared to pay the penalty.''

 It is apparent, under this holding and the admitted facts here presented, that the instructions given were proper.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.